# Preliminary Economic Loss Report

## Ms. Krystal Wallis

### Prepared by

### Francis Anthony Gallela

30 November 2007

**FRANCIS ANTHONY GALLELA**
2440 Tagalak Drive
Anchorage, Alaska 99504
(907) 333-6657
FAX (907) 333-0517

# FRANCIS ANTHONY GALLELA
**2440 Tagalak Drive**
**Anchorage, Alaska 99504**
**(907) 333-6657**
**Fax (907) 333-0517**
**francis@francisgallela.com**

Law Office of Verne Rupright & Associates, LLC
Verne E. Rupright, Esq.
322 North Main Street
Wasilla, AK 99654

PRELIMINARY ECONOMIC LOSS REPORT

Dear Mr. Rupright:                                    30 November 2007

This report contains my preliminary findings to date relative to the economic loss resulting from the injuries/abuse to Ms. Krystal Wallis on or about 1 December 2002.

Losses calculated to date are presented in the tables on page 2.

The losses in the tables on both pages are presented using three scenarios:

- **Scenario One** utilizes the average wages of a high school graduate.

- **Scenario Two** utilizes the average female Alaskan wages.

- **Scenario Three** utilizes the average wages of BA degree holder.

The losses are detailed in the following monographs of this report.

Research is on going. Should additional information become available this report may be supplemented as appropriate.

Additional medical losses are presented under separate letter.

| **Scenario One** | Past | Future | Total |
|---|---|---|---|
| Wages | $ 27,672 | $ 426,378 | $ 454,050 |
| Retirement | $ 1,392 | $ 11,287 | $ 12,679 |
| Medical Benefit | $ 24,455 | $ 311,880 | $ 336,335 |
| Totals - Scenario One | $ 53,519 | $ 749,545 | $ 803,064 |

Wage: Average High School

| **Scenario Two** | Past | Future | Total |
|---|---|---|---|
| Wages | $ 13,738 | $ 439,640 | $ 453,378 |
| Retirement | $ 945 | $ 12,013 | $ 12,958 |
| Medical Benefit | $ 24,455 | $ 311,880 | $ 336,335 |
| Totals - Scenario Two | $ 39,138 | $ 763,533 | $ 802,671 |

Wage: Average Alaskan Wage

| **Scenario Three** | Past | Future | Total |
|---|---|---|---|
| Wages | $ 0 | $ 942,950 | $ 942,950 |
| Retirement | $ 0 | $ 22,662 | $ 22,662 |
| Medical Benefit | $ 0 | $ 336,338 | $ 336,338 |
| Totals - Scenario Three | $ 0 | $ 1,301,950 | $ 1,301,950 |

Wage: Average BA Degree

*N.B. The calculations of loss presented in the above table are preliminary. Research is on-going. This report may be supplemented as appropriate.*

### Lost Wages/Earnings Capacity

Ms. Krystal Wallis was sexually abused as a young teenager and was subjected to drugs at about age 16.02 years. As a result of abuses suffered, Ms. Wallis will not be capable of maintaining a normal worklife and will require psychological counseling and treatment for life (Source: Aaron Kaplan, Ph.D.).

Absent her injuries, Ms. Wallis could have maintained a normal worklife and could have completed college. Dr. Kaplan opines that Krystal's career capabilities are now severely negatively impacted.

The economic damages are estimated utilizing three scenarios as follows.

**Scenario One**
At time of injury/abuse, Ms. Wallis was in high school. The calculations in this scenario assume that Krystal could have, absent her injuries/abuse, graduated from high school and earned the average wage of a high school graduate.

Arrayed below are the average wages of a high school graduate, nation wide, by sex, race, and age group:

| Age Group | Amount |
|---|---|
| <25 | $19,420 |
| 25 - 34 | $26,315 |
| 35 – 44 | $27,351 |
| 45 – 54 | $27,371 |
| 55 – 64 | $27,759 |
| 65 – 74 | $23,891 |

(Source: U.S. Census Bureau, Educational Attainment in the United States: 2004, Table 9. Note: the 2004 statistics utilize 2003 earnings, therefore; the wages presented above have been converted to 2006 dollars).

The year-group average wages are used to approximate her loss of wages/earnings capacity in this scenario from age 19 (11 November 2005) to end of worklife.

Taxes have been subtracted as appropriate.

Mitigating income (described in a following section) has been subtracted, year for year, from lost wages/earnings capacity to arrive at a net loss.

Past losses, those from 11 November 2005 (Krystal's 19th birthday) to date of trial, are summed to date of trial and are presented in the tables on page 2 of this report.

Future losses, those from date of trial to statistical end of worklife, are reduced to present value to date of trial and are presented in the tables on page 2 of this report.

**Scenario Two**
At time of injury/abuse, Ms. Wallis was in high school. The calculations under Scenario Two assume that Krystal could have, absent her injuries/abuse, earned the average wage of Alaskan females. This scenario utilizes the average Alaskan 2005 wage for females (converted to 2006 dollars), by sex and year group as follows:

| Age group | |
|---|---|
| 19- 24 | $13,183 |
| 25-29 | $22,097 |
| 30-34 | $26,603 |
| 35-39 | $29,070 |
| 40-44 | $30,582 |
| 45-49 | $33,708 |
| 50-54 | $35,000 |
| 55-59 | $33,024 |
| 60-64 | $27,691 |
| 65-74 | $17,991 |

Source: Alaska Department of Labor, Research and Analysis Section, Juneau, Alaska.

The year group average wages above are used as her loss in this category under Scenario Two from age 19 (11 November 2005) to end of worklife.

Taxes have been subtracted as appropriate.

Mitigating income (described in a following section) has been subtracted, year for year, from earnings capacity to arrive at a net income loss.

Past losses, those from 11 November 2005 to date of trial, are summed to date of trial and are presented in the tables on page 2 of this report.

Future losses, those from date of trial to statistical end of worklife, are reduced to present value to date of trial and are presented in the tables on page 2 of this report.

**Scenario Three**
Under this scenario, the calculations assume that Ms. Wallis could have earned the mean wages of a female college graduate. Note: Dr. Kaplan states that Krystal is smart enough to complete college. However, her injuries/abuse will probably prevent her from doing so successfully.

The calculations in this scenario assume that, absent injury, Krystal would have graduated from high school in the spring of 2005 and could have entered college in the fall of 2005. Then she could have completed her studies in the spring of 2009. Ms. Wallis could have then obtained full time employment on or about 1 July 2009.

Arrayed below are the average wages by sex, race, and year group of BA degree holders nationwide:

| Age Group | Amount |
|---|---|
| 25 - 34 | $41,199 |
| 35 – 44 | $52,353 |
| 45 – 54 | $48,499 |
| 55 – 64 | $49,125 |
| 65 – 74 | $41,531 |

(Source: U.S. Census Bureau, Educational Attainment in the United States: 2004, Table 9. Note: the 2004 statistics utilize 2003 earnings, therefore; the wages presented above have been converted to 2006 dollars).

The year group wages above are used as her loss of wages/earnings capacity in Scenario Three from 1 July 2009 to end of worklife.

Taxes have been subtracted as appropriate.

Mitigating income (described in a following section) has been subtracted, year for year, from lost wages/earnings capacity to arrive at a net income loss year by year.

No past wage losses are presented under Scenario Three. That is, absent injury, Krystal could have graduated from college in the Spring of 2009, a date after estimated trial date.

Future losses, those from date of trial to statistical end of worklife, are reduced to present value to date of trial and are presented in the tables on page 2 of this report.

**Mitigating Income**
Mitigating income is that income a person has earned, or is expected to earn, in spite of their injuries. Mitigating income is then subtracted, year for year, from lost wages/earnings capacity to derive a net wage/earnings capacity loss by year.

Ms. Wallis has worked very little following her abuse. Dr. Kaplan states Krystal is not capable of working full time now and might not ever hold down a full time job. Given her current status, Dr. Kaplan estimates Krystal may will be unemployed six months per year, for life. Krystal, without improvement, will probably do restaurant/hostessing work, security, housekeeping, and so on. She will have frequent job changes and unemployment for periods of time. She will not be able to hold a steady job for a long period of time. (This hopefully will improve over time, with treatment and maturity, but not until she reaches her 30's, if not later.)

Absent her injuries/abuse, Krystal was more than bright enough to finish college and earn college wages. Now, crystal will be stymied in her employment efforts.

Her actual future jobs and earnings are unknown at this time. However, it is reasonable, given her injuries/abuse, to assume a level of earnings equal to minimum wage as an estimate for her future wages. That is, typically she may not be able to secure jobs that pay more for significant periods.

Alaska minimum wage is $7.15 per hour. Then, $7.15 x 2,080 hours per year (full time employment) = $14,872 per annum. Assuming long periods of unemployment, such as six months, would result in 50 percent x $14,872 = $7,436 per annum mitigating income.

The amount $7,436 per annum is utilized as an approximation of Krystal's mitigating income under Scenarios One and Two from 11 November 2005 (Krystal's 19th birthday) to end of statistical worklife.

In the calculations in Scenario Three (College graduate), the mitigating income starts on 1 July 2009 (absent injuries/abuse, Krystal could have graduated from college in the spring of 2009 and the calculations assume that Krystal could have obtained full time employment on or about 1 July 2009) and continued to date of statistical end of worklife.

Taxes have been subtracted as appropriate.


**Retirement Loss**
Ms. Wallis has, most likely, lost some employer funded retirement benefits. Absent her injuries, Krystal would have, most likely, been covered by an employer funded retirement plan upon obtaining full time employment.

The calculations assume that Krystal could have obtained employment on or about 11 November 2005 (her 19th birthday) for Scenarios One and Two (average High School wages and average Alaskan wages, females). For Scenario Three (BA degree), the losses start on 1 July 2009.

Since any future retirement plan she might have secured is unknown, the workings of a 401-K are used to estimate the loss in this area.

Typically, employers contribute 3 percent or more of an employee's gross wages into a 401-K (or similar) retirement account. The calculations utilize the 3 percent per year of earnings capacity for each Scenario to determine the lost employer retirement contribution amount.

> N.B. According to Dr. Kaplan, Krystal may not ever be employed full time. Therefore, most likely, she will not have any employer funded benefits associated with her impaired employment.

Past losses, those from date of injury to date of trial (Scenarios One and Two), are summed to date of trial and are presented in the tables on page 2 of this report. In Scenario Three (BA degree) the losses do not start until after time of estimated trial.

Future losses, those from date of trial to end of worklife, are summed to date of end of worklife and are then reduced to present value to date of trial and are presented in the tables on page 2 of this report.

**Medical Benefits Loss**
Ms. Wallis has, most likely, lost employer funded medical insurance benefits. Therefore, as noted previously in the lost wages section and lost retirement section, Krystal's ability to obtain full time employment (given her injuries) and secure typical employer funded benefits is unlikely.

To estimate the value of lost medical insurance, the State of Alaska Public Employees Retirement System (PERS) is used as a surrogate for this report.

The cost to the State was $763 per month or $9,156 per annum for medical insurance benefits effective 1 July 2004.

The cost to the State was $841 per month or $10,092 per annum for medical insurance benefits effective 1 July 2005.

The cost to the State was $863 per month or $10,358 per annum for medical insurance benefits effective 1 July 2006. This amount is utilized in the calculations from 1 July 2006 to end of worklife.

The amounts outlined above were utilized to estimate her loss in this category from 11 November 2005 (19th birthday) to end of worklife for Scenario's One and Two. In Scenario Three (BA degree), the loss calculations start on 1 July 2009.

Past losses, those from date of injury to date of trial (Scenarios One and Two), have been summed and are presented in the tables on page 2 of this report. Scenario 3 has no past losses since Krystal's BA degree employment would have started after the estimated trial date.

Future losses, those from date of trial to end of worklife, have been reduced to present value to date of trial and are presented in the tables on page 2 of this report.

**Medical Expenses / Psychological Counseling**
Ms. Wallis will require medications and psychological counseling and residential/specialized treatment/hospitalization. These costs are in addition to all losses presented in this report. The future medical and counseling expenses are presented in a separate report.

**Training**
Krystal may need significant training/education. This cost is not addressed or presented at this time. Research is on going and the findings may be used to supplement this report as appropriate.

**Taxes**
Taxes have been subtracted as appropriate from all losses.

**Worklife and Lifespan**
Ms. Wallis was born on 11 November 1986 (year 1986.86). Date of injury/abuse utilized in this report is 1 December 2002 (year 2002.92) at approximate age 16.05 years. Krystal was single at time of injury/abuse. . Calculations are based upon single status. The worklife of a man is commonly used for single females and was used in all worklife calculations in this report. Her statistical worklife at age 19 was 37.21 years placing her statistical date of end of worklife in the year 2043.07. (Source: Journal of Legal Economics, Vol. 11, No. 1, Spring/Summer 2001, Table 3, Col. Mean, page 33). This worklife was used in all Scenario One and Scenario Two calculations.

Krystal could have graduated from college in the spring of 2009 and could have obtained employment in the summer of 2009, approximately seven months after her 22nd birthday. Krystal has a statistical worklife at age 22, as a college graduate, of 38.17 years placing her statistical end of worklife in the year 2048.03 at age 60.98. (Source: Journal of Legal Economics, Vol. 11, No. 1, Spring/Summer 2001, Table 5, Col. Mean, page 38). This worklife was used in all Scenario Three calculations.

Krystal's estimated statistical date of death is calculated at age 82.05 years in the year 2068.92 (Source: U. S. Life Tables – 2003, Vol. 54, No. 14, Table 6, revised 28 March 2007).

**Present Value Calculations**
The calculations utilize the average interest rates of U.S. Treasury securities for 10-year maturities from 1960 through 2006 to calculate an average interest rate of 6.96 percent while the average change in weekly earnings over the same period, 4.30 percent, is utilized as the inflation rate as published in <u>The Economic Report of The President</u>, February 2007, to calculate the net discount rate (NDR) of 2.55 percent in accordance with Alaska statute 09.17.040.  This net discount rate is used to reduce lost earnings as well as non-market labor, if appropriate, to present value.

Retirement losses are discounted utilizing the NDR of 2.55 percent.

Medical insurance costs and medical expenses, if appropriate, are discounted using the NDR of .86 percent, the difference between the interest rate and the medical segment of the Consumer Price Index (CPI).

This economist normally does not calculate loss wages or associated benefits prior to the injured parties 19th birthday.  Therefore, these types of losses are calculated from 11 November 2005.  All past wage and benefit losses presented in the tables are from this date to date of trial.

All future losses are reduced to present value to date of trial.

The estimated trial date utilized is 1 April 2008.


**Other Losses**
The losses outlined in this letter do not include any calculations for non-economic losses.


Sincerely,

*[signature: Francis Anthony Gallela]*

Francis Anthony Gallela